UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ENDER FUENTES PABON and GREYY ANTONIO RIVERA FERNANDEZ,

Petitioners,

v.

JULIO HERNANDEZ, Seattle Acting Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement,

Respondents.

CASE NO. 2:26-cv-02529-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioners Ender Fuentes Pabon and Greyy Antonio Rivera Fernandez's Petition for Writ of Habeas Corpus. Dkt. No. 1. Having reviewed the petition, Respondents' return (Dkt. No. 4), Petitioners' traverse (Dkt. No. 7), and the relevant record, the Court GRANTS the petition.

## I. BACKGROUND[1]

### A. Parties

Petitioners are Ender Fuentes Pabon and Greyy Antonio Rivera Fernandez. Both

[1] Many of the facts recounted here are based on hearsay contained within narrative portions of documents from Petitioner's immigration record, or on the declaration of Deportation Officer Andre Ouk, who does not claim to have

Petitioners are presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 1 ¶ 1.

Respondents[2] are Julio Hernandez, Seattle Acting Field Office Director, Enforcement and Removal Operations ("ERO"), United States Immigration and Customs Enforcement ("ICE"); Bruce Scott, Warden, Northwest ICE Processing Center; Markwayne Mullin, United States Secretary of Homeland Security; United States Department of Homeland Security ("DHS"); and Todd Blanche, United States Attorney General.

**B. Petitioners' Immigration Background**

**1. Petitioner Fuentes Pabon**

Petitioner Fuentes Pabon is a citizen of Colombia. Dkt. No. 1 ¶ 16. After fleeing Colombia, on November 9, 2023, Petitioner Fuentes Pabon entered the United States to seek asylum. *Id.* ¶ 38. United States Border Patrol officers encountered Petitioner Fuentes Pabon in Texas, detained him, determined that he had entered the United States unlawfully, and placed him in expedited removal proceedings. Dkt. No. 5 (Ouk Decl.) ¶ 4.

On January 22, 2024, Petitioner Fuentes Pabon was issued a Notice to Appear ("NTA"), charging him as inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.* ¶ 7; Dkt. No. 6-3 (Fuentes Pabon NTA) at 2. On March 7, 2024, he was released from immigration custody on an Order of Release on Recognizance ("OREC"). Dkt. No. 6-4 (Fuentes Pabon OREC) at 2. On or about March 7, 2024, Petitioner Fuentes Pabon was enrolled in ICE's Alternatives to Detention ("ATD") Program. Dkt. No. 6-5 (Fuentes Pabon ATD Enrollment Form) at 2–4.

---

firsthand personal knowledge of most of the facts therein (*see* Dkt. No. 5 (Ouk Decl.) ¶ 2). The Court makes no findings as to whether these are true and correct statements of fact.

[2] As used in this Order, "Respondents" does not include Respondent Scott, who has not appeared in this matter.

While Petitioner Fuentes Pabon was out of detention, he settled in Tacoma, Washington (*see* Dkt. No. 1 ¶ 39), and obtained employment authorization (*see* Dkt. No. 6-6 (employment authorization form) at 2). Petitioner Fuentes Pabon "made friends, attended a local Catholic church, and found work as a DoorDash driver." Dkt. No. 1 ¶ 42. During the approximately two years Petitioner Fuentes Pabon was free, he asserts that he "diligently complied" with the conditions of his release. *Id.* ¶ 40. Deportation Officer Andre Ouk avers to the contrary that Petitioner "had multiple biometric check-in violations, which violate[d] the terms and conditions outlined in OREC[.]" Dkt. No. 5 ¶ 10. However, Ouk's assertions are unsubstantiated by Petitioner's Form I-213, which outlines his removal record and immigration history, but is silent as to any reporting violations during such history. *See* Dkt. No. 6-7 (Fuentes Pabon Form I-213) at 2–4.

On June 1, 2026, ICE canceled Petitioner Fuentes Pabon's OREC. Dkt. No. 5 ¶ 12; Dkt. No. 6-8 (Fuentes Pabon Cancelation of OREC) at 2. Petitioner's cancelation memorandum stated that the OREC had been canceled "for the reasons stated in the Form I-213, dated June 1, 2026" (Dkt. No. 6-8 at 2), which states that "[d]uring a routine case review, ERO officers discovered that [Petitioner] Fuentes Pabon had been arrested by local law enforcement" (Dkt. No. 6-7 at 3). In their response, Respondents acknowledge that "the I-213 does not identify the arrest and only lists his 2023 conviction relating to his unlawful entry under 'Criminal History.'" Dkt. No. 4 at 6 n.3. Petitioner Fuentes Pabon avers that he "ha[s] never been arrested and only had a couple traffic tickets that [he] had not paid." Dkt. No. 1-2 (Fuentes Pabon Decl.) ¶ 8.

Subsequent to the cancelation of Petitioner Fuentes Pabon's OREC, Petitioner Fuentes Pabon was arrested, then detained at NWIPC. Dkt. No. 1 ¶¶ 44–45. Petitioner Fuentes Pabon alleges that he received no written notice of his re-detention and was not provided with a hearing before a neutral decision maker. *See id.* ¶¶ 46–47. D

**2. Petitioner Rivera Fernandez**

Petitioner Rivera Fernandez is a native of Honduras and a dual citizen of Honduras and Mexico. Dkt. No. 5 ¶ 15. On or about December 17, 2024, Petitioner Rivera Fernandez, his then-partner, and his partner's six-year-old daughter presented at the Brownsville, Texas, port of entry and applied for admission. *Id.* ¶ 16; Dkt. No. 6-11 (Rivera Fernandez Form I-213) at 3; Dkt. No. 1 ¶ 50. United States Custom and Border Protection officers determined that Petitioner Rivera Fernandez lacked documentation for lawful entry into the United States. Dkt. No. 5 ¶ 16. Petitioner Rivera Fernandez was charged with violation of Section 212(a)(7)(A)(i)(I) of the INA and issued an NTA. Dkt. No. 6-12 (Rivera Fernandez NTA) at 5. DHS initiated removal proceedings and paroled Petitioner Rivera Fernandez into the United States. Dkt. No. 5 ¶ 18.

Petitioner Rivera Fernandez, his partner, and his partner's daughter settled in Wapato, Washington. Dkt. No. 1 ¶ 51. Petitioner was enrolled in the Intensive Supervision Appearance ("ISAP") Program, which required him to "present approximately once a month for an in-person appointment . . . , and to be home for monthly home visits." *Id.* Petitioner Rivera Fernandez alleges that he "diligently complied with his reporting requirements." *Id.* ¶ 52. While released, Petitioner Rivera Fernandez married his partner "and lived with her, his 8-year-old stepdaughter, and his mother." *Id.* ¶ 54. Petitioner Rivera Fernandez's stepdaughter enrolled in the local school, and the family attended the local Catholic Church. *Id.* Petitioner Rivera Fernandez's sister moved "nearby." *Id.*

On April 24, 2026, Petitioner Rivera Fernandez's parole expired (Dkt. No. 5 ¶ 20), and he was ordered removed from the United States on May 18, 2026. Dkt. No. 6-14 (immigration court order) at 4. Petitioner Rivera Fernandez appealed the removal, and on June 25, 2026, the

Board of Immigration Appeals ("BIA") accepted the appeal.[3] Dkt. No. 6-19 (filing receipt for appeal) at 2; Dkt. No. 6-20 (interim BIA order) at 3. On July 30, 2026, ICE issued a memorandum that canceled Petitioner Rivera Fernandez's "most current Order of Release on Recognizance." Dkt. No. 6-18 (Rivera Fernandez Cancelation of OREC) at 2. On July 1, 2026, ICE detained Petitioner Rivera Fernandez "based on the . . . removal order." Dkt. No. 5 ¶ 25.

## II. LEGAL STANDARD

### A. Habeas Corpus Petition Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

### B. Injunctive Relief Legal Standard

A petitioner "seeking a permanent injunction . . . must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Factors three and four of the *eBay* analysis merge when the Government is the party opposing injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit has held that a permanent injunction is appropriate where the party requesting it can demonstrate

[3] Although the appeal was filed more than 30 days after the issuance of the removal order, on July 22, 2026, the BIA issued an interim order stating that Petitioner Rivera Fernandez's appeal "is considered timely filed." Dkt. No. 6-20 (interim BIA order) at 3.

it is likely to suffer irreparable injury. *See City & County of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018) ("An injunction is appropriate when the party seeking relief demonstrates that . . . it is likely to suffer irreparable injury that cannot be redressed by an award of damages[.]").

## III. Discussion

### A. Statutory Authority for Petitioners' Detention

As a preliminary matter, Respondents argue that Petitioners are subject to mandatory detention under 8 U.S.C. §1225(b). Dkt. No. 4 at 8 (Petitioner Fuentes Pabon), 9 (Petitioner Rivera Fernandez). Both Petitioners were released on ORECs in accordance with Section 236 of the INA. *See* Dkt. No. 6-4 (Fuentes Pabon OREC) at 2; Dkt. No. 6-18 at 2. Respondents acknowledge that "this Court has previously held that a person released pursuant to OREC is detained pursuant to 8 U.S.C. § 1226(a)." *Id.* at 8 (citing *Marquez Rujano v. U.S. Immigr. & Customs Enf't*, No. C26-325, 2026 WL 764150, at *3 (W.D. Wash. Mar. 18, 2026)). Respondents also recognize the "inconsistencies in the record" concerning the purported basis for re-detention. *Id.* at 9. However, Respondents also assert that the release of a noncitizen on an OREC prior to July 2025 "should not determine whether that person's detention authority is currently governed by Section 1225(b) or Section 1226(a)," because "[o]n July 8, 2025, DHS issued a memorandum to ICE employees explaining that DHS had revisited its legal position on detention and release authorities." Dkt. No. 4 at 4–5. The Ninth Circuit has rejected DHS's interpretation of detention and release authorities. *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *24–26 (9th Cir. July 30, 2026).[4]

[4] It does not escape the Court's notice that the *Rodriguez Vazquez* decision was issued one day before Respondents filed their return.

In line with the substantial body of this District's case law holding that a noncitizen released on OREC is subject to discretionary detention under Section 1226, not mandatory detention under Section 1225, the Court concludes that Section 1226 governs both Petitioners' respective detentions in this case. *See, e.g.*, *Marquez Rujano*, 2026 WL 764150, at *3; *Berelidze v. Noem*, No. C26-618, 2026 WL 879249, at *3–4 (W.D. Wash. Mar. 31, 2026).

**B. Grounds for Relief**

Petitioners seek two forms of relief: First, Petitioners seek a writ of habeas corpus ordering their immediate release from custody, and their "restor[ation] . . . to the same conditions as those in place prior to [their] re-detention, unless Respondents choose to impose less restrictive conditions[.]" Dkt. No. 1 at 20. Second, Petitioners seek a permanent injunction that prevents "Respondents from re-detaining Petitioners during the pendency of their removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that each Petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks[.]" *Id.* The Court will address these in turn.

**1. Constitutionality of Petitioners' Re-Detention**

The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The

fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.")).

In *Mathews*, the Supreme Court established a three-part balancing test determining whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Marquez Rujano v. U.S. Immigr. & Customs Enf't*, No. C26-325, 2026 WL 764150, at *3–4 (W.D. Wash. Mar. 18, 2026); *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

Respondents acknowledge the relevance of the *Mathews* analysis here. *See* Dkt. No. 4 at 8. Consistent with persuasive authority, the Court will evaluate Petitioners' claims under *Mathews*, considering each factor in turn to determine whether Petitioners' re-detention comports with constitutional due process requirements.

**a. Petitioner Fuentes Pabon**

Respondents concede, "When applying the *Mathews* analysis, courts in this District have found that petitioners detained due to release violations[5] like Petitioner Fuentes Pabon were entitled to pre-deprivation hearings." Dkt. No. 4 at 8–9 (collecting cases). Respondents continue, "[I]f this Court were to apply the same reasoning as stated in *Caiza Aucatoma* [*v. Hernandez*, No. C26-1253, 2026 WL 1265541, at *6–8 (W.D. Wash. May 8, 2026),] as well as the other listed cases, this Court will likely find the re-detention of Petitioner required notice and pre-deprivation hearings to comport with procedural due process." Dkt. No. 4 at 9.

In *Caiza Aucatoma*, the petitioners, like Petitioner Fuentes Pabon, had been "briefly detain[ed]," then "released them on ORECs." *Caiza Aucatoma*, 2026 WL 1265541, at *7. Upon their release, they "established connections in this country," including employment, establishment in a local community, and engagement or marriage. *See id.* The Government revoked the *Caiza Aucatoma* petitioners' ORECs based upon what the court deemed "unclear" and "vague" evidence of violations, then "re-detain[ed] [them] prior to providing them with a hearing—in which factual questions regarding their compliance with conditions of release could have been resolved[.]" *Id.* at *7–8. The *Caiza Aucatoma* court engaged in a *Mathews* analysis and found that the factors "strongly favor[ed] [p]etitioners." *Id.* at *8. The court concluded that "release [wa]s the appropriate and constitutionally required remedy." *Id.*

Here, the Court agrees with Respondents that *Caiza Aucatoma* and similar cases are relevant and persuasive. Petitioner Fuentes Pabon had established connections in the community, his re-detention was constitutionally deficient, and he must be immediately released.

[5] It is disputed whether Petitioner Fuentes Pabon actually violated the terms of his OREC. *See supra* Section I.B.1.

**b. Petitioner Rivera Fernandez**

As to Petitioner Rivera Fernandez, Respondents attempt to distinguish him from Petitioner Fuentes Pabon by noting that Petitioner Rivera Fernandez was initially released on parole pursuant to 8 U.S.C. § 1182(d)(5), not an OREC under Section 1226(a). *See* Dkt. No. 4 at 9. The record indicates that, on December 17, 2024, Petitioner Rivera Fernandez was paroled into the United States (*see* Dkt. No. 6-11 at 3), and that Petitioner Rivera Fernandez's parole expired on April 24, 2026 (Dkt. No. 5 ¶ 20). But on July 30, 2026, ICE issued a memorandum that "cancelled [Petitioner Rivera Fernandez's] most current Order of Release on Recognizance[.]" Dkt. No. 6-18 at 2. To cancel an OREC, there necessarily must have been an OREC to cancel. For their part, Respondents ignore this unavoidable conclusion and do not explain how Petitioner Rivera Fernandez could have had a non-existent OREC revoked. The record thus demonstrates that Petitioner Rivera Fernandez was—and is—subject to the discretionary-detention regime of Section 1226.

Respondents' opposition to Petitioner Rivera Fernandez's release is predicated on their contention that Petitioner Rivera Fernandez is subject to Section 1225, not Section 1226. *See* Dkt. No. 4 at 10–11. But given that this premise is false—if a non-citizen is released on OREC, they necessarily must have been detained and released under Section 1226, *see Ortega-Cervantes v. Gonzales,* 501 F.3d 1111, 1115–16 (9th Cir. 2007)—Respondents' position is untenable and unpersuasive. Like Petitioner Fuentes Pabon, Petitioner Rivera Fernandez had been released on an OREC, had established durable roots in this country, and obtained a substantial interest in his liberty. *See* Dkt. No. 1-3 (Rivera Fernandez Decl.) ¶ 7. For the same reasons articulated in *Caiza Aucatoma*, the Court finds that Petitioner Rivera Fernandez's re-detention was constitutionally deficient, and that he must be immediately released.

**2. Injunctive Relief**

A petitioner seeking a permanent injunction against a government party "must demonstrate (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *See eBay Inc.*, 547 U.S. at 391; *see also Nken*, 556 U.S. at 435. As to the first factor, an injunction is appropriate where the party can demonstrate that "it is likely to suffer irreparable injury[.]" *City & County of San Francisco*, 897 F.3d at 1243. Further, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Petitioners easily establish the *eBay* factors, and Respondents do not present any argument in opposition to injunctive relief.

With respect to the first factor, "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[C]ourts in this district have repeatedly found that the Government's conduct in revoking release and re-detaining non-citizens without pre-deprivation process is unconstitutional[,]" yet "[t]he Government has chosen to 'respectfully disagree' with those orders and to continue its current practices." *Espinoza Palacios v. Hermosillo*, No. C26-491, 2026 WL 686138, at *10 (W.D. Wash. Mar. 11, 2026) (collecting cases). This satisfies the first factor.

With respect to the second factor, Petitioner Fuentes Pabon avers that, prior to his re-detention, he "worked as a DoorDash driver and could continue that job if [he's] released from

detention." Dkt. No. 1-2 ¶ 7. Further, both Petitioners allege emotional injury to both themselves and to their families (*see* Dkt. No. 1 ¶¶ 49, 58), and both Petitioners have been separated from their families. All of this satisfies the second factor. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (recognizing as irreparable harm the "economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained").

The third and fourth *eBay* factors merge when the Government is the party opposing the issuance of injunctive relief. *Nken* 556 U.S. at 435. With respect to these factors, "[I]t is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)). What is more, in the immigration context, the Ninth Circuit has recognized that "[t]he costs to the public of immigration detention are 'staggering[.]'" *Hernandez*, 872 F.3d at 996. Accordingly, the balance of hardships and public interest weigh in Petitioner's favor.

As Petitioners meet all four of the *eBay* factors, and Respondents have not provided any argument in opposition to the requested relief, the Court finds that Petitioners are entitled to injunctive relief. "At a future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence." *Abdikarim v. Scott*, No. C26-2731, 2026 WL 2409268, at *4 (W.D. Wash. Aug. 18, 2026) (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1089 (E.D. Cal. 2025).

## IV. CONCLUSION

Accordingly, Petitioners' petition for writ of habeas corpus (Dkt. No. 1) is GRANTED. It is hereby ORDERED:

(1) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioners from detention **within twenty-four (24) hours** under the terms of their most recent ORECs or other appropriate conditions of release consistent with Section 1226(a);

(b) SHALL submit to the Court, **within forty-eight (48) hours** of Petitioners' release from detention, a declaration or status report confirming that Petitioners have been released from custody and informing the Court of the date and time of their release.

(2) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL NOT re-detain Petitioners, without proper notice and a pre-detention hearing unless permissible under an applicable statute or regulation. At such a hearing, Respondents must demonstrate justification for detention by clear and convincing evidence.

(3) Respondents SHALL return to Petitioners any personal property, including any personal identification document (other than a passport) and any employment authorization document.

(4) Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 21st day of August, 2026.

Tana Lin
United States District Judge